## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORTH WORTH DIVISION

| | |
|---|---|
| **CLAUDIO VALLEJO,** | |
| *Plaintiff*, | |
| **v.** | |
| **KELLER INDEPENDENT SCHOOL DISTRICT AND ITS BOARD OF TRUSTEES CHARLES RANDKLEV, JOHN BIRT, JONI SHAW SMITH, MICAH YOUNG, CHELSEA KELLY, CHRIS COKER, and HEATHER WASHINGTON in their official capacity,** | **CIVIL ACTION NO. 4:25-cv-00138-O** |
| *Defendants*. | |

**Defendants' Brief in Support of the Motion to Dismiss Plaintiff's Original Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

I.      Introduction.........................................................................................................1

II.     Facts ....................................................................................................................2

III.    Arguments and Authorities .................................................................................4

        A.      Legal standard for Rule 12(b)(6) motions to dismiss ..............................4

        B.      Plaintiff's Voting Rights Act Section 2 claim fails to state a claim upon
                which relief can be granted. ....................................................................5

                1.      Plaintiff does not even attempt to meet VRA Section 2's
                        requirement that claims must be founded upon a showing that
                        Hispanic voters could constitute a majority of the citizen voting
                        age population within a single-member district, as required by
                        *Gingles* precondition one. ......................................................... 6

                2.      Plaintiff does not attempt to show that Hispanics have been
                        politically cohesive in their voting patterns over time in Keller
                        ISD, as required by *Gingles* precondition two.......................... 10

                3.      Plaintiff does not attempt to show that the majority in Keller ISD
                        votes in a bloc to defeat Hispanic voters' candidate of choice, as
                        required by *Gingles* precondition three.................................... 13

                4.      Plaintiff cannot show that the totality of circumstances
                        demonstrates that Hispanic voters are given less of an opportunity
                        to participate in the political process. ...................................... 14

        C.      Plaintiff's 14th and 15th Amendment Equal Protection claims fail to state
                a claim upon which relief can be granted. ..............................................15

        D.      To the extent any claim survives this motion to dismiss, the Court should
                dismiss the remaining claims against the individually named Board
                members, leaving the Keller ISD Board of Trustees as the Defendant for
                this action...............................................................................................17

        E.      The Court should award Defendants' their reasonable attorneys' fees and
                costs as the prevailing party in this litigation........................................19

IV.     Prayer ................................................................................................................19

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.W. v. Humble Indep. Sch. Dist.*,
    25 F.Supp.3d 973 (S.D. Tex. 2014) ........................................................................18

*Abbott v. Perez*,
    585 U.S. 579 (2018) ..............................................................................................16, 17

*Allen v. Milligan*,
    599 U.S. 1 (2023) ..........................................................................................5, 7, 10, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................5, 11, 13, 17

*Bartlett v. Strickland*,
    556 U.S. 1 (2009) ...........................................................................................6, 7, 8, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................5, 11, 13, 17

*Benavidez v. Irving Indep. Sch. Dist.*,
    690 F.Supp.2d 451 (N.D. Tex. 2010) .......................................................................8

*Castro Romero v. Becken*,
    256 F.3d 349 (5th Cir. 2001) ..................................................................................18

*Crear v. JPMorgan Chase Bank, N.A.*,
    491 F.Supp.3d 207 (N.D. Tex. 2020) ........................................................................5

*E. Jefferson Coal. For Leadership & Dev. v. Par. of Jefferson*,
    926 F.2d 487 (5th Cir. 1991) ..................................................................................11

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ....................................................................................5

*Gines v. D. R. Horton, Inc.*,
    699 F.3d 812 (5th Cir. 2012) ....................................................................................4

*Gomillion v. Lightfoot*,
    364 U.S. 339 (1960) ................................................................................................15

*In re Great Lakes Dredge & Dock Co.*,
    624 F.3d 201 (5th Cir. 2010) ....................................................................................5

*Growe v. Emison*,
    507 U.S. 25 (1993)............................................................................................13

*Inclusive Comtys. Project, Inc. v. Lincoln Prop. Co.*,
    920 F.3d 890 (5th Cir. 2019) ...........................................................................5

*Jenkins v. Bd. of Educ. of Houston Indep. Sch. Dist.*,
    937 F.Supp. 608 (S.D. Tex. 1996) ..................................................................18

*Johnson v. Waller Cnty.*,
    593 F.Supp.3d 540 (S.D. Tex. 2022) ..............................................................16

*Kentucky v. Graham*,
    473 U.S. 159 (1985).........................................................................................17

*Kumar v. Frisco Indep. Sch. Dist.*,
    476 F.Supp.3d 439 (E.D. Tex. 2020)...................................................8, 10, 11

*Lackey v. Stinnie*,
    604 U.S.___, 145 S.Ct. 659 (Feb. 25, 2025)...................................................19

*League of United Latin Am. Citizens Council No. 4434 v. Clements*,
    986 F.2d 728 ....................................................................................................10

*Lewis v. Almance County, N.C.*,
    99 F.3d 600 (4th Cir. 1996) ............................................................................12

*Lopez v. Abbott*,
    339 F.Supp.3d 589 (S.D. Tex. 2018) ...............................................8, 11, 14, 15

*McMillian v. Monroe Cnty., Ala.*,
    520 U.S. 781 (1997).........................................................................................17

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ...........................................................................5

*Notariano v. Tangipahoa Parish Sch. Bd.*,
    266 F.Supp.3d 919 (E.D. Louisiana 2017) .....................................................18

*Petteway v. Galveston Cnty.*,
    111 F.4th 596 (5th Cir. 2024) (en banc) ...............................................5, 6, 7, 10

*Reyes v. City of Farmers Branch, Texas*,
    No. 3:07-CV-900-O, 2008 WL 4791498 (N.D. Tex. Nov. 4, 2008)
    .....................................................................................6, 7, 8, 12, 13, 14

*Rodriguez v. Harris Cnty., Tex.*,
    964 F.Supp.2d 686 (S.D. Tex. 2013), *aff'd* 601 F.Appx. 255 (5th Cir. 2015).........................11

*Rogers v. Lodge*,
   458 U.S. 613 (1982)................................................................................16

*Shafer v. Pearland Indep. Sch. Dist.*,
   No. 3:22-cv-387, 2023 WL 6216538 (S.D. Tex. May 4, 2023)..............................18

*Shaw v. Reno*,
   509 U.S. 630 (1993)................................................................................16

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ....................................................................4

*Guillot ex rel. T.A.G. v. Russell*,
   59 F.4th 743 (5th Cir. 2023) ....................................................................18

*Thornburg v. Gingles*,
   478 U.S. 30 (1986)...........................................1, 5, 6, 8, 9, 10, 12, 13, 14, 15

*Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*,
   229 F.3d 478 (5th Cir. 2000) ....................................................................18

*Valdespino v. Alamo Heights Indep. Sch. Dist.*,
   168 F.3d 848 (5th Cir. 1999) ....................................................................8

*Veasey v. Abbott*,
   830 F.3d 216 (5th Cir. 2016) ....................................................................16

*Washington v. Davis*,
   426 U.S. 229 (1976)................................................................................16

*White v. Regester*,
   412 U.S. 755 (1973)................................................................................15

*Wyche v. Madison Parish Police Jury*,
   635 F.2d 1151 (5th Cir. 1981) ..................................................................15

*Zimmer v. McKeithen*,
   485 F.2d 1297 (5th Cir. 1973) ..............................................................9, 15

**Statutes**

42 U.S.C. § 1973(b) ....................................................................................14

42 U.S.C. § 1988(b) ....................................................................................19

52 U.S.C. § 10310(e) ..................................................................................19

Acts 26th Leg., 1900, 1st C.S., ch. 7............................................................2

Tex. Educ. Code § 11.057 ................................................................................................2

Tex. Educ. Code § 11.058 ................................................................................................2

Tex. Elec. Code § 41.001(a)(1) ........................................................................................2

**Rules**

Fed. R. Civ. P. 8(a)(2) ......................................................................................................4

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 4

**Other Authorities**

Black's Law Dictionary 1352 (rev. 4th ed. 1968) ........................................................19

Steve Bickerstaff, *Voting Rights Challenges to School Boards in Texas: What Next?*, 49 Baylor L. Rev. 1017 (1997) ........................................................................2

**TO THE HONORABLE JUDGE OF SAID COURT**:

Defendants Keller Independent School District and its Board of Trustees Charles Randklev, John Birt, Joni Shaw Smith, Micah Young, Chelsea Kelly, Chris Coker, and Heather Washington in their official capacity, (collectively "Defendants") file this Brief in Support of the Motion to Dismiss Plaintiff's Original Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6):

## I.     INTRODUCTION

Plaintiff Claudio Vallejo brings Voting Rights Act and 14th and 15th Amendment claims challenging Keller Independent School District's decades-old voting system for its Board of Trustees. But he did not plead facts required by *Gingles* or showing that the voting system was passed with discriminatory intent or purpose. The Court should grant Defendants' motion to dismiss with prejudice.

The District's voting system for the Board of Trustees includes seven Board members elected to three-year staggered terms in District wide, by-numbered-place elections. Plaintiff is pursuing a Voting Rights Act Section 2 claim and 14th and 15th Amendment claims without pleading facts that could satisfy any of the *Gingles* preconditions on behalf of a minority group of Hispanic voters that he admits make up no more than 16% of the citizen voting age population in Keller ISD. In fact, the Complaint fails to even acknowledge the *Gingles* requirement that Plaintiff's Section 2 claim requires him to show the possibility of creating a demonstration district in which Hispanics would comprise over 50% of the citizen voting age population. And rather than support his claim with historical voting patterns in the District by race, Plaintiff asks the Court to consider only the race of some of the candidates in three prior elections.

The Complaint likewise fails to properly allege a violation of the 14th and 15th Amendments. Specifically, the Complaint fails to allege facts that could plausibly support a

1

discriminatory-intent finding on the constitutional claims. These and other similar flaws are fatal to the Complaint as a matter of law. Accordingly, the Court should dismiss the Complaint for the failure to state a claim upon which relief could be granted and award Defendants their attorneys' fees and costs.

## II.    FACTS

**The Parties**

1.    Defendant Keller Independent School District encompasses the City of Keller and portions of Fort Worth, Colleyville, Southlake, and other neighboring communities in northeast Tarrant County. Compl. ¶¶ 18, 26. Keller ISD was established in 1911 and presently serves approximately 34,000 students from the district population of over 200,000 people. Compl. ¶ 26.

2.    Defendant Keller ISD Board of Trustees is the governing body for the District. It includes seven members, elected to three-year staggered terms in District wide, by-numbered-place elections. *E.g.*, App'x 1 (Keller ISD BBB (LOCAL)-X, Issued Dec. 4, 2006). The Board has been comprised of seven members since at least the 1930s. *Id.*; *see also* Tex. Educ. Code §§11.057, .058; Steve Bickerstaff, *Voting Rights Challenges to School Boards in Texas: What Next?*, 49 Baylor L. Rev. 1017, 1021 (1997) (noting that in 1900, "the [Texas] legislature provided a more uniform system . . . [authorizing] a seven-member board of trustees elected at-large" in Texas school districts") (citing Act of Feb. 21, 1900, 26th Leg., 1st C.S., ch. 7 § 1, 1900 Tex. Gen. Laws 18, 18); App'x 2 (KISD School Board Minutes showing seven members, May 21, 1934).

3.    The Defendants named individually in their official capacities are the seven current members of the Keller ISD Board of Trustees. Three of these Defendants' positions on the Board are up for election on Saturday, May 5, 2025, which is a "uniform election date" used by countless municipalities and school districts statewide. Tex. Elec. Code § 41.001(a)(1). Early voting will run from April 22 through April 29. *See* https://www.kellerisd.net/board-of-trustees/elections.

4.      Plaintiff Claudio Vallejo asserts that he is a registered voter who moved into Keller ISD in 2021 so that his two elementary-aged children could attend Keller ISD schools. Compl. ¶¶ 15, 17, 49.

**Plaintiff's allegations regarding Keller ISD**

5.      Plaintiff asserts that Keller ISD is an emerging minority-majority district with respect to student enrollment. Compl. ¶ 8, 27–28 (citing the Texas Education Agency and asserting that in the 2023–24 school year, the District's *student* population was 47.4% white, 24.8% Hispanic, and 11.4% African American).

6.      As for the population of eligible voters in the District, Plaintiff asserts that according to the 2022 United States Census American Community Survey ("ACS"), Hispanic Citizen Voting Age Population ("Hispanic CVAP") in Keller ISD is 15.4%. Compl. ¶¶ 2, 49.

7.      The 2022 ACS CVAP data that Defendants were able to locate indicates an estimate of 65% white alone, 16.8% Hispanic or Latino, 13% two or more races, and 7.4% Asian alone for Keller ISD. App'x 9–11 (2022 ACS tables). The 2023 ACS CVAP estimates for Keller ISD include a slight decline in the Hispanic and Latino population: 65.4% white alone, 13.8% Hispanic or Latino, 10.2 % two or more races, and 5.9% Asian alone. App'x 12–14 (2023 ACS tables). The two prior ACS surveys (which would thus capture the entire period in which Plaintiff has resided in Keller ISD) show similar percentages.[1] In 2019 the ACS CVAP data indicated 75.5% white alone, 14.3% Hispanic or Latino, and 8.0% Asian alone (there was no estimate given for the two or more races category). App'x 3–5 (2019 ACS tables). And in 2021, there was a slight decline in Hispanic CVAP: 73.0% white alone, 12.6% Hispanic or Latino, 7.3% two or more races, and 5.5% Asian alone. App'x 6–8 (2021 ACS tables).

---

[1] The 2024 survey data is not scheduled for release until September 11, 2025. *See* https://www.census.gov/programs-surveys/acs/news/data-releases/2024/release-schedule.html.

8. Plaintiff asserts that three candidates who are Hispanic or have Spanish surnames have run for the Board and lost during a 2007 election and two 2019 elections, and states that no candidate with a Spanish surname has been elected to the Board since 1999. Compl. ¶ 45–46. The Tarrant County election results show that the two candidates in the 2019 election received 33.18% (Pilar Fraser, place 2) and 13.95% (Jon Rodriguez, place 3) of the vote, respectively. App'x 15 (Cumulative Report—Official, May 10, 2019). And the candidate in the 2007 election, Joseph Sandoval, received 12.9% of the vote. App'x 16 (Precinct Report—Total Voters—Unofficial, May 12, 2007).

9. Plaintiff asserts that the District wide, by-numbered-place system of elections has enabled the 30% of the District population living east of Denton Highway to control the Board elections against the wishes of the 70% of the population living west of Denton Highway. Compl. ¶¶ 5, 30, 32.

### III.    ARGUMENTS AND AUTHORITIES

### A.    Legal standard for Rule 12(b)(6) motions to dismiss

From the outset of litigation, a plaintiff is obligated to file a complaint containing "a short and plain statement of the claim *showing that the pleader is entitled to relief*." Fed. R. Civ. P. 8(a)(2) (emphasis added). Defendants may challenge whether plaintiffs have met that obligation by filing a motion to dismiss for the "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

Courts must generally accept as true well-pleaded facts, *e.g.*, *Gines v. D. R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012), but courts will not "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (citations omitted). To state a viable claim, a complaint must include "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). The facts alleged must be sufficient "to state a claim to relief that is plausible on its face." *Id.* Courts inquire whether the plaintiff asserted "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation omitted). The Fifth Circuit has described the plausibility standard: "[t]o be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) (internal quotation and citation omitted).

As relevant here, courts considering a 12(b)(6) motion must limit their review to the facts alleged in the compliant and matters of which courts may take judicial notice under Federal Rule of Evidence 201, such as matters of public record. *Crear v. JPMorgan Chase Bank, N.A.*, 491 F.Supp.3d 207, 212–13 (N.D. Tex. 2020) (citing *Inclusive Communities Project, Inc. v. Lincoln Property Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 782–83 (5th Cir. 2011) (explaining that the district court took proper judicial notice of publicly available documents and transcripts which were matters of public record directly relevant to the issue at hand).

**B.      Plaintiff's Voting Rights Act Section 2 claim fails to state a claim upon which relief can be granted.**

As the U.S. Supreme Court and the en banc Fifth Circuit have recently reconfirmed, VRA Section 2 claims require plaintiffs to satisfy the three "preconditions" and the "totality of circumstances test" established in *Thornburg v. Gingles*, 478 U.S. 30 (1986). *Allen v. Milligan*, 599 U.S. 1, 18 (2023); *Petteway v. Galveston Cnty.*, 111 F.4th 596, 610 (5th Cir. 2024) (en banc).

The *Gingles* preconditions require that: (1) the minority group is large enough and geographically compact enough to constitute a majority in one or more single-member districts, (2) the minority group votes cohesively, and (3) a white majority votes sufficiently as a bloc to defeat the minority voters' candidate of choice in the presently configured district. *Gingles*, 478 U.S. at 50–54; *Petteway*, 111 F.4th at 601. A plaintiff must establish each of these *Gingles* factors by a preponderance of the evidence, and a "failure to establish any one of the *Gingles* factors precludes a finding of vote dilution." *Reyes v. City of Farmers Branch, Texas*, No. 3:07-CV-900-O, 2008 WL 4791498, at *1 (N.D. Tex. Nov. 4, 2008) (internal citation omitted). And even if a plaintiff satisfies *Gingles*, he must then demonstrate that "under the totality of the circumstances," the minority group he represents has "less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* at *2 (internal quotation omitted).

Plaintiff cannot satisfy any of these requirements as demonstrated by his own allegations in the Original Complaint.

> **1.    Plaintiff does not even attempt to meet VRA Section 2's requirement that claims must be founded upon a showing that Hispanic voters could constitute a majority of the citizen voting age population within a single-member district, as required by *Gingles* precondition one.**

Plaintiff fails to state a VRA Section 2 claim because he does not even attempt to allege a factual basis that would satisfy the first *Gingles* precondition. The first *Gingles* precondition requires a plaintiff to show that a minority group "is sufficiently large and geographically compact to constitute a majority in a reasonably configured single-member district." *Petteway*, 111 F.4th at 601 (internal quotation omitted). This rule provides "an objective, numerical test" asking whether the minority group "make[s] up more than 50 percent of the voting-age population in the relevant geographic area." *Id.* at 610 (citing *Bartlett v. Strickland*, 556 U.S. 1, 18 (2009)). Courts look to

U.S. Census survey data when considering the CVAP percentages of each racial group. *See, e.g.,* *Reyes*, 2008 WL 4791498, at *7. Unless the plaintiff can establish this objective numerical majority, the relevant minority group has "no better or worse opportunity to elect a candidate than does any other group of voters with the same relative voting strength." *Petteway*, 111 F.4th at 609 (citing *Bartlett*, 556 U.S. at 14). Put another way, if the plaintiff cannot show that its minority group would maintain an objective numerical majority of CVAP within a single-member district, then it has no power to control an election to elect its candidate of choice, and the existing voting system cannot have deprived members of that minority group of electoral opportunities. *See* *Bartlett*, 556 U.S. at 15 ("Minority voters are not immune from the obligation to pull, haul, and trade to find common political ground.").

The Supreme Court has cautioned that allowing a Section 2 claim without establishing the racial group constitutes a majority of CVAP would uniquely and improperly "grant minority voters a right to preserve their strength for the purposes of forging an advantageous political alliance with voters outside the minority group." *Id.* at 14–15 (internal quotation omitted). "Indeed, unless the minority group can show that it has the potential to elect a representative of its *own choice* in a single-member district, *there neither has been a wrong nor can be a remedy under Section 2*." *Petteway*, 111 F.4th at 609–10 (emphasis added) (internal quotation omitted).

Moreover, extending Section 2 to cover claims by a minority group "despite its sub-majority numbers [could] cross the line from protecting minorities against racial discrimination to the prohibited . . . goal of mandating proportional representation." *Id.* at 612 (internal quotation omitted); *see also Allen*, 599 U.S. at 28 ("Forcing proportional representation is unlawful and inconsistent with . . . Section 2"). Thus, courts must apply the 50%+ CVAP requirement as a "bright line test" which recognizes "[t]he special significance, in the democratic process, of a

majority." *Kumar v. Frisco Indep. Sch. Dist.*, 476 F.Supp.3d 439, 493 (E.D. Tex. 2020) (citing *Bartlett*, 556 U.S. at 19).

Given these principles, it should come as no surprise that courts have held steadfastly to the majority-of-the-population requirement when adjudicating challenges to at-large voting systems under Section 2. For example, in *Benavidez v. Irving Independent School District*, Hispanic CVAP ranging from 41.7% to 45.4% was held to be insufficient to meet the "bright line test" of the 50% threshold. 690 F.Supp.2d 451, 457 (N.D. Tex. 2010). In *Valdespino v. Alamo Heights Independent School District*, Hispanic CVAP of 47.9% and 48.3% in a demonstration district was not enough to meet the first *Gingles* precondition. 168 F.3d 848, 851, 856 (5th Cir. 1999). And in *Reyes v. City of Farmers Branch*, this Court explained that the evidence showed only that the Hispanic CVAP "is somewhere near 50%, [but] it was just as likely that the HCVAP of the proposed district is below or equal to 50%" and concluded that plaintiff had failed to satisfy the first precondition. No. 3:07-cv-900-O, 2008 WL 4791498, at *18–*19 (N.D. Tex. Nov. 4, 2008), *aff'd sub nom. Reyes v. City of Farmers Branch, Tex.*, 586 F.3d 1019 (5th Cir. 2009). By contrast, demonstration districts with CVAP between 55% and 59% were deemed "comfortably over" the 50% threshold to satisfy the first precondition. *Lopez v. Abbott*, 339 F.Supp.3d 589, 606 (S.D. Tex. 2018).

Under this consistent line of authority, a Section 2 claim cannot succeed where the plaintiff has not even attempted to show that a demonstration district meeting the 50%+ threshold can be drawn.

Plaintiff's failure to make any attempt to draw a demonstration district above the 50% threshold to base his claim upon *Gingles* precondition 1 is dispositive of his Section 2 claim and requires dismissal. Plaintiff admits that Hispanics only "comprise 15.4% of KISD's Citizen Voting

Age Population." Compl. ¶ 2. With such a low Hispanic CVAP spread throughout the District, it is unsurprising that Plaintiff tries to establish a Section 2 claim without showing that Hispanics would make up a majority of the CVAP in any single-member district that could be drawn in Keller ISD.[2] The lack of a sufficiently large Hispanic CVAP is fatal to Plaintiff's Section 2 claim.

Unable to satisfy the 50% threshold requirement in *Gingles* precondition 1, Plaintiff asks this Court to instead consider things like: the overall populations of the District (rather than citizen populations), Compl. ¶ 6; the student populations, rather than the voter populations, by racial group, Compl. ¶¶ 8, 27–28, 44; the racial makeup of the District's faculty and administration, Compl. ¶¶ 55–56; student performance on standardized testing and other metrics, Compl. ¶¶ 58–59; and unsupported suggestions that off-cycle elections depress only minority voter turnout, Compl. ¶ 43.[3] But these factors on which Plaintiff bases his VRA Section 2 claim cannot replace the required analysis under the first *Gingles* precondition, which requires Plaintiff to demonstrate that Hispanics make up at least 50% of the CVAP in at least one single-member district in a demonstration plan. Plaintiff's failure to address this *Gingles* requirement is fatal to his Section 2 claim, and these other considerations cannot revive it.

Plaintiff also asks the Court to look to other "voters of color" in an attempt to support his Section 2 claim by aggregating different racial groups under the "minority voter" label. *E.g.,*

---

[2] It also seems telling that in suggesting that at-large voting systems may be "constitutionally infirm" if they give minority voters less opportunity to elect candidates of choice, Compl. ¶ 66, Plaintiff cites only one case, *Zimmer v. McKeithen*, 485 F.2d 1297 (5th Cir. 1973). *Zimmer* is a pre-*Gingles* case, and it addresses a situation in which the population was 59% black and 41% white, *see id.* at 1309 (Coleman, J., dissenting), so it offers no support for Plaintiff's claim that a Section 2 violation may be shown by a minority group with approximately 16% of the CVAP and without creating effective demonstration plans.

[3] Plaintiff also complains that the Board was considering whether to initiate a detachment of a portion of Keller ISD to create a new school district under Section 13.103 of the Texas Education Code. Compl. ¶¶ 32–37. But the District announced it will not seek detachment. *See Keller School Board Kills Plan to Split District, Citing Costs Associated with Detachment*, Dallas Morning News, Mar. 14, 2025, *available at https://www.dallasnews.com/news/education/2025/03/14/keller-school-board-kills-plan-to-split-district-citing-costs-associated-with-detachment/*. In any event, Plaintiff's claims concern Keller ISD's current voting system, so allegations regarding a hypothetical future district structure are not relevant to the claims at issue.

Compl. ¶ 38, 73, 74. But the Fifth Circuit has rejected the concept of coalition districts, holding that "coalition claims do not comport with Section 2's statutory language or with Supreme Court cases interpreting Section 2, particularly *Bartlett*." *Petteway*, 111 F.4th at 599.

The Court should dismiss Plaintiff's Section 2 claim and need not even engage with the other *Gingles* preconditions. *League of United Latin Am. Citizens Council No. 4434 v. Clements*, 986 F.2d 728, 743 ("Failure to establish any one of the *Gingles* factors precludes a finding of vote dilution."). But as shown below, the Complaint fails to state a claim upon which relief could be granted with respect to those preconditions as well.

> **2.    Plaintiff does not attempt to show that Hispanics have been politically cohesive in their voting patterns over time in Keller ISD, as required by *Gingles* precondition two.**

The Complaint makes no effort to allege facts that demonstrate that Hispanic voters in the District have been politically cohesive over a long period of time, and thus does not meet Plaintiff's burden under *Gingles* precondition 2. Precondition 2 requires that "the minority group must be able to show that it is politically cohesive." *Allen*, 599 U.S. at 18. This factor would demonstrate that if given the opportunity to constitute a majority in a particular demonstration district (*Gingles* 1), "the political cohesiveness of the minority group" would ensure that a candidate of the group's choice "would in fact be elected." *Id.* at 18–19. "The notion of political cohesiveness contemplates that a specified group of voters shares common beliefs, ideals, principles, agendas, concerns, and the like such that they generally unite behind or coalesce around particular candidates and issues." *Clements*, 986 F.2d at 744 (citation omitted). Cohesion can be proven in a variety of ways, but one element that must be shown is that "a significant number of minority group members usually vote for the same candidates." *Id.* at 743. And although a plaintiff is not required to show that the minority group *always* votes for the same candidate, a plaintiff must establish a pattern of voting over time, which "is not easy to prove." *Kumar*, 476 F.Supp.3d at 504 (citing *Clements*, 999 F.2d

at 896–97 (Jones, J., concurring) (describing "the problem of determining minority political cohesiveness" as a "difficult" one)).

Plaintiff must do more than offer a bare assertion that the Hispanic voters in the District are politically cohesive in order to satisfy *Iqbal* and *Twombly*. Yet a bare assertion of Hispanic voter cohesion in the District is all that the Complaint has to offer. Compl. ¶ 73 ("The Hispanic voters within KISD are politically cohesive and elections for the Board at issue reflect a clear pattern of racially polarized voting . . ."); Compl. ¶ 40 (pointing to a nearly twenty-year-old statement by the Supreme Court that voting in Texas is racially polarized).

Beyond these bare assertions of cohesion, the facts that the Complaint includes for support do not—and cannot—show a pattern of voting cohesion among Hispanic voters in Keller ISD. Rather than detailing a long pattern of election results and voting patterns, the Complaint cites only three elections: one that was 18 years ago, and two more that occurred six years ago. But that is a far cry from establishing a pattern of anything. *See, e.g.*, *Kumar*, 476 F.Supp.3d at 504 (attempting to show a pattern of cohesion through a review of eleven elections); *Rodriguez v. Harris Cnty., Tex.*, 964 F.Supp.2d 686, 756 (S.D. Tex. 2013) (analyzing 50 elections), *aff'd* 601 F.Appx. 255 (5th Cir. 2015). Worse still, for the three cited elections, the Complaint focuses only on the surnames of the candidates, rather than the racial makeup of the voters and their relative support for the candidates. Compl. ¶ 45–46 ("Several candidates who are Hispanic or have Spanish surnames have run for the KISD Board and lost.").

But courts have rejected the assumption that a minority group would always prefer a candidate of the same race. "The preferred candidate need not be a member of the minority group." *Lopez*, 339 F.Supp.3d at 609 (citing *E. Jefferson Coal. For Leadership & Dev. v. Par. of Jefferson*, 926 F.2d 487, 493 (5th Cir. 1991)). "[I]t is the status of the candidate as the chosen representative

11

of a particular racial group, not the race of the candidate" that counts. *Gingles*, 478 U.S. at 68

(plurality opinion of Brennan, J., joined by Blackmun, Marshall, and Stevens, JJ.). As Judge Luttig

explained in *Lewis v. Almance County, N.C.*:

> "[A] minority-preferred candidate may be a non-minority, just as a
> minority candidate may be the preferred candidate of the voters of
> the majority's race. The black community may prefer a white
> candidate, as the white community may prefer a black candidate. A
> Martin Luther King, Jr. or a Colin Powell can represent white
> Americans, no less than a John Fitzgerald Kennedy or a Hubert
> Humphrey can represent black Americans. To indulge the contrary
> presumption, that every black person necessarily prefers a black
> candidate over a white candidate, or that every white person
> necessarily prefers a white candidate over a black candidate, would
> itself constitute invidious discrimination of the kind that the Voting
> Rights Act was enacted to eradicate, effectively disenfranchising
> every minority citizen who casts his or her vote for a non-minority
> candidate. To acquiesce in such a presumption would be not merely
> to resign ourselves to, but to place the imprimatur of law behind, a
> segregated political system."

99 F.3d 600, 607 (4th Cir. 1996).

Moreover, this Court has expressly recognized that "Spanish-surname data are disfavored

… for analyzing claims that the votes of Hispanics have been diluted in violation of Section 2 of

the VRA." *Reyes v. City of Farmers Branch, Texas,* No. 3:07-CV-900-O, 2008 WL 4791498, at

*9 (N.D. Tex. Nov. 4, 2008).

Accordingly, the Complaint's allegations concerning the presumed race or surname of

three candidates for prior elections does not even begin to demonstrate whether or not Hispanic

voters are a cohesive voting bloc in Keller ISD. Also notably, the two presumed Hispanic

candidates in the 2019 election example Plaintiff cites received significantly different levels of

voter support—Pilar Fraser received 33.18% compared to the 13.95% of the vote that Jon

Rodriguez received, App'x 15 (Cumulative Report—Official, May 10, 2019)—casting doubt as to

whether racially cohesive voting occurred in 2019.

12

The Complaint also suggests that with the Hispanic *student* population of 24.8% and the Hispanic CVAP of 15.4% in the District, "one would expect to find at least one Hispanic member on the Board." Compl. ¶ 44. This argument, like the argument related to the three elections, engages in the racially improper presumption that minorities will always vote for minorities. It cannot form the basis for satisfying *Gingles* precondition 2. It also runs contrary to case law holding that proportionality between population and number of seats won is neither required by, nor the goal of, Section 2. *See, e.g.*, *Allen*, 599 U.S. at 28 ("Forcing proportional representation is unlawful and inconsistent with . . . Section 2"). Moreover, Plaintiff's citation to student racial data cannot be used to establish the second *Gingles* precondition. *See, e.g.*, *Reyes*, 2008 WL 4791498, at *7.

The Complaint thus fails to state a Section 2 claim upon which relief could be granted because it makes no attempt to satisfy *Gingles* precondition 2. Instead, it offers only a bare assertion that Hispanic voters in Keller ISD vote cohesively. The Supreme Court's decisions in *Iqbal* and *Twombly*, and the standards for asserting sufficient facts to defeat a 12(b)(6) motion, require more.

      **3.**      **Plaintiff does not attempt to show that the majority in Keller ISD votes in a bloc to defeat Hispanic voters' candidate of choice, as required by *Gingles* precondition three.**

Plaintiff does not attempt to show that a cohesive white voting bloc controls the elections in Keller ISD, which is required to satisfy the third *Gingles* precondition. The third *Gingles* precondition requires demonstrating that "the white majority votes sufficiently as a bloc to enable it . . . to defeat the minority's preferred candidate." *Allen*, 599 U.S. at 18 (citation omitted). The purpose of this requirement is to "'establish[] that the challenged [voting plan] thwarts a distinctive minority vote' at least plausibly on account of race." *Id.* at 19 (quoting *Growe v. Emison*, 507 U.S. 25 (1993)). Plaintiff fails this step for much the same reasons as he fails *Gingles* 2—he relies

principally on his bare assertion that "a bloc of white voters controls all seven trustee positions," Compl. ¶ 42, without actually attempting to show any voting patterns of these voters over time.

To begin, Plaintiff's failure to attempt to satisfy *Gingles* precondition 2 and establish that a cohesive group of Hispanic voters exists should preclude his ability to show that such a group has been thwarted in their efforts to elect candidates of choice. By relying on only three elections and merely pointing out the names of the candidates, rather than analyzing voting patterns of the Keller ISD voters by race, Plaintiff has not even attempted to show a cohesive white voting bloc controls the elections in Keller ISD. And the 2019 elections Plaintiff points to offer at least some indication that white voters do not cohesively vote only for a white-preferred candidate. Indeed, considering that one of the Spanish named candidates received nearly 20% more votes than the other candidate in the 2019 election, this indicates that she may have received quite a bit of support from voters of other races. App'x 15 (Cumulative Report—Official, May 10, 2019).

> **4.    Plaintiff cannot show that the totality of circumstances demonstrates that Hispanic voters are given less of an opportunity to participate in the political process.**

Even if the Complaint had alleged facts that would plausibly satisfy all three *Gingles* preconditions, Plaintiff would still need to show that the totality of circumstances warranted relief in order to state a viable Section 2 claim. Specifically, Plaintiff would need to demonstrate that "under the totality of the circumstances," Hispanic voters have "'less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.'" *Reyes*, 2008 WL 4791498, at *2 (quoting 42 U.S.C. § 1973(b)).

The Complaint makes the bare assertion without support that the totality of circumstances shows the denial of opportunities. Compl. ¶ 74. The totality-of-circumstances analysis requires courts to balance numerous factors that the Complaint does not discuss. *Lopez*, 339 F.Supp.3d at 602 (including a non-exhaustive list of nine factors). Accordingly, Plaintiff has not alleged facts

that could satisfy the totality-of-circumstances analysis, even if Plaintiff had met the *Gingles* preconditions.

But Plaintiff's failure to allege facts that support any of the *Gingles* preconditions obviates the need for the Court to analyze the totality of circumstances before dismissing this case. *See, e.g.*, *Lopez*, 339 F.Supp.3d at 602 (describing the totality of circumstances test as "the means by which the inference of vote dilution [created by establishing each of the *Gingles* preconditions] may be rebutted or cemented") (citation omitted).

\* \* \*

In sum, the Complaint fails to make any meaningful attempt to base Plaintiff's VRA Section 2 claim upon satisfying the *Gingles* preconditions and totality-of-circumstances analysis that have served as the framework for Section 2 claims for forty years. This failure to plead facts that could conceivably satisfy the legal framework for Section 2 claims is fatal to that claim as a matter of law. Accordingly, the Court should dismiss the VRA claim with prejudice.

## C.   Plaintiff's 14th and 15th Amendment Equal Protection claims fail to state a claim upon which relief can be granted.

Plaintiff has not properly alleged a violation of the 14th or 15th Amendment and therefore these claims should be dismissed. A voting plan will violate the 15th Amendment when it has been constructed for the purpose of denying equal access to the electoral system and it has such an effect. *See Gomillion v. Lightfoot*, 364 U.S. 339, 341 (1960). The 14th and 15th Amendments do not require proportional racial or ethnic representation. *Wyche v. Madison Parish Police Jury*, 635 F.2d 1151, 1159 (5th Cir. 1981) (citing *White v. Regester*, 412 U.S. 755, 765–66 (1973)). And it is "axiomatic that at-large . . . schemes are not per se unconstitutional." *Zimmer v. McKeithen*, 485 F.2d 1297, 1304 (5th Cir. 1973) (collecting cases).

15

An Equal Protection challenge requires a plaintiff to first establish that race was the *predominant motivating factor* in a districting decision such that the plan was enacted with discriminatory intent. *Abbott v. Perez*, 585 U.S. 579, 603 (2018); *Shaw v. Reno*, 509 U.S. 630, 649 (1993). In the context of at-large voting systems, courts review whether the system was "conceived or operated as [a] purposeful device[] to further racial discrimination by minimizing, cancelling out or diluting the voting strength of racial elements in the voting population." *Rogers v. Lodge*, 458 U.S. 613, 617 (1982) (internal quotation omitted). And for the Equal Protection Clause to be violated "the invidious quality of a law claimed to be racially discriminatory must ultimately be traced to a racially discriminatory purpose." *Id.* (quoting *Washington v. Davis*, 426 U.S. 229, 240 (1976)). Discriminatory intent is not shown merely by establishing that "a policy disproportionately affects members of a certain race." *Johnson v. Waller Cnty.*, 593 F.Supp.3d 540, 612 (S.D. Tex. 2022) (citing *Rogers*, 458 U.S. at 618). "Legislators' awareness of a disparate impact on a protected group is not enough: the law must be passed *because of* that disparate impact." *Id.* (quoting *Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016)).

Unlike in *Rogers v. Lodge*, where the Supreme Court reviewed an at-large scheme in which African Americans had "always made up a substantial majority of the population" but were a minority of the registered voters, 458 U.S. at 623, this is not a case in which Hispanics comprise anything close to a majority of the citizen voting age population. Plaintiff merely alleges that the Hispanic population is growing. Compl. ¶¶ 2, 27–28. Recent ACS survey data shows that this population is not close to a "substantial majority" of the population. Instead, the available ACS data for the most recent years indicate that Hispanic CVAP has vacillated between 12% and 16%. App'x 3–14. For a court to hold that voters with a relatively small percentage of the vote could command dissolution of a decades-old at-large districting scheme on Equal Protection grounds

16

would in practical terms upend the settled precedent that at-large districts are consistent with the Constitution.

Plaintiff has likewise offered no evidence as to the motive behind the District's decades-old decision to establish a seven-member Board of Trustees elected in at-large elections. What Plaintiff seeks to impute to the Board as purported evidence of discriminatory intent with respect to the voting scheme is nothing of the sort. *See generally* Compl. ¶¶ 57–65 (complaints about purported recent events involving libraries, mascots, and meal plans). These issues have nothing to do with why Keller ISD initially adopted an at-large by-numbered-place voting scheme decades ago, as provided in the Texas Education Code. Nor is this evidence that race was a predominant motivating factor in establishing the at-large by-numbered-place voting system. *See Abbott*, 585 U.S. at 603. These purported facts do not plausibly show a discriminatory intent for originally implementing and continuing to maintain this decades-old voting system. Just as with the Voting Rights Act claim, the Complaint fails its basic obligation to allege facts sufficient "to state a claim to relief that is plausible on its face" and that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" with respect to the 14th and 15th Amendment claims. *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678.

   **D.    To the extent any claim survives this motion to dismiss, the Court should dismiss the remaining claims against the individually named Board members, leaving the Keller ISD Board of Trustees as the Defendant for this action.**

The Keller ISD Board members sued in their official capacities should be dismissed with prejudice. Lawsuits against government officials in their official capacities "represent only another way of pleading an action against an entity of which an officer is an agent" and "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (internal quotations omitted); *see also McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997). Official-capacity suits against municipal

officials are "*de facto* suit[s] against the local government entit[ies] of which the officials act as agents." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023). When allegations against officials in their official capacities "duplicate claims against the [] governmental entities themselves," dismissal of the claims against the officers is proper. *E.g.*, *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *see also Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) (noting that "official-capacity claims and the claims against the governmental entity essentially merge"). In the education context, district courts have routinely dismissed claims against school board members with prejudice, leaving the board itself as the remaining defendant. *E.g.*, *Shafer v. Pearland Indep. Sch. Dist.*, No. 3:22-cv-387, 2023 WL 6216538, *2–*3 (S.D. Tex. May 4, 2023); *Notariano v. Tangipahoa Parish Sch. Bd.*, 266 F.Supp.3d 919, 928 (E.D. Louisiana 2017); *A.W. v. Humble Indep. Sch. Dist.*, 25 F.Supp.3d 973, 1003 (S.D. Tex. 2014); *Jenkins v. Bd. of Educ. of Houston Indep. Sch. Dist.*, 937 F.Supp. 608, 613 (S.D. Tex. 1996).

Plaintiff has asserted identical claims against, and seeks identical relief from, all Defendants. *E.g.* Compl. Request for Relief ("Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants, providing for the following relief"). Plaintiff's official-capacity claims against the named Board members are thus redundant to his claims against the Keller ISD Board itself. Accordingly, the Court should dismiss with prejudice the claims against Defendants Charles Randklev, John Birt, Joni Shaw Smith, Micah Young, Chelsea Kelly, Chris Coker, and Heather Washington, acting in their official capacities, and leave the Keller ISD Board of Trustees itself as the proper remaining defendant to defend against any claims that survive this motion to dismiss.

### E. The Court should award Defendants' their reasonable attorneys' fees and costs as the prevailing party in this litigation.

Defendants should be awarded their attorney' fees and costs for having to defend themselves in a lawsuit that has not even properly alleged claims upon which relief can be granted. Federal law permits "the prevailing party" to seek recovery of attorneys' fees and costs in Voting Rights Act and constitutional litigation over the "voting guarantees of the fourteenth and fifteenth amendment[s]." 42 U.S.C. § 1988(b); 52 U.S.C. § 10310(e). If the Court dismisses this case as requested in this motion, then Defendants will be the "prevailing party" in this lawsuit and entitled to seek attorneys' fees and costs. *See Lackey v. Stinnie*, 604 U.S.__, 145 S.Ct. 659, 667 (Feb. 25, 2025) (quoting Black's Law Dictionary for the definition of prevailing party: "The party ultimately prevailing when the matter is finally set at rest"); *see also* Black's Law Dictionary 1352 (rev. 4th ed. 1968) (A "prevailing party" is the party "who successfully prosecutes the action or successfully defends against it").

If the Court determines that this case should be dismissed at this stage, it should exercise its discretion and award Defendants their reasonable attorneys' fees and costs for their successful defense in this action. Defendants request that the Court enter a briefing schedule under which Defendants will be permitted to introduce argument and evidence as to the proper amount of those reasonable attorneys' fees and costs so that the parties may litigate, and the Court may decide, the proper amount to award as attorneys' fees and costs.

### IV.     PRAYER

The Court should dismiss the Original Complaint with prejudice because it fails in numerous respects to state a claim upon which relief could be granted. The Court should award

Defendants their attorneys' fees and costs as the prevailing party in this litigation, as well as any other and further relief to which Defendants may be justly entitled.

Respectfully submitted,

**JACKSON WALKER LLP**

By: */s/ Timothy Davis*
    Timothy Davis
    State Bar No. 24086142
    tdavis@jw.com
    Allison B. Allman
    State Bar No. 24094023
    aallman@jw.com
    Alexandra M. Williams
    State Bar No. 24107297
    amwilliams@jw.com
    777 Main St., Suite 2100
    Fort Worth, Texas 76102
    (817) 334-7206
    (817) 870-5126 (Facsimile)

    -and-

    Bethany Pickett Shah
    State Bar No. 24102357
    bpickett@jw.com
    1401 McKinney, 19th Floor
    Houston, Texas 77010
    (713) 752-4365
    (713) 752-4221 (Facsimile)

    -and-

    Adam W. Aston (pro hac vice)
    State Bar No. 24045423
    aaston@jw.com
    100 Congress Ave., Suite 1100
    Austin, Texas 78701
    (512) 236-2056
    (512) 691-4456 (Facsimile)

    *Attorneys for Defendants*

### <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing instrument has been forwarded via e-service, e-file or U.S. First Class Mail on April 17, 2025.

William A. Brewer III
Joshua H. Harris
1717 Main Street, Suite 5900
Dallas, Texas 75201
wab@brewerattorneys.com
jkh@brewerattorneys.com


*/s/ Timothy Davis*
Timothy Davis

21