IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CLAUDIO VALLEJO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-CV-00138-O |
| | § | |
| KELLER INDEPENDENT SCHOOL DISTRICT, ET AL., | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Before the Court are Defendants Keller Independent School District ("the District" or "KISD"), Charles Randklev ("Randklev"), John Birt ("Birt"), Joni Shaw Smith ("Smith"), Micah Young ("Young"), Chelsea Kelly ("Kelly"), Chris Coker ("Coker"), and Heather Washington's ("Washington") (collectively, "Defendants") Motion to Dismiss, Brief in Support, and Appendix in Support (ECF Nos. 34, 35, 36); Plaintiff Claudio Vallejo's ("Vallejo") Response and Brief in Support (ECF Nos. 37, 38); and Defendants' Reply (ECF No. 39). Having reviewed the briefing and applicable law, the Court **GRANTS** Defendants' Motion to Dismiss and Motion for Attorney's Fees (ECF No. 34).

I.  **BACKGROUND**[1]

Vallejo, a Hispanic resident in the District with two children attending KISD schools, alleges that at-large voting for the KISD School Board "denies Hispanic voters a fair opportunity to elect representatives of their choosing, illegally diluting their votes."[2]

---

[1] All facts are taken from the Plaintiff's Amended Complaint (ECF No. 29) unless otherwise specified.
[2] Am. Compl. ¶ 6, ECF No. 29.

1

The District covers roughly 51 square miles, encompassing the City of Keller and parts of Colleyville, Fort Worth, Haltom City, Hurst, North Richland Hills, Southlake, Watauga, and Westlake.[3] As of 2022, the Citizen Voting Age Population ("CVAP") breakdown of the District was 67.5% White, 15.4% Hispanic, 8.5% Black, and 7.7% Asian.[4] The racial breakdown of enrolled students is 47.4% white, 24.8% Hispanic, and 11.4% African American.[5]

The District is governed by the School Board, which consists of seven members. The Board members are elected for three-year staggered terms in a District-wide at-large election, meaning that voters cast ballots for all candidates, and the candidates receiving the most votes win the open seats. All seven School Board members are White as of 2025. Of the seven members, five come from the part of the District that is east of Denton Highway, which is "predominantly white"[6] and comprises 30% of KISD residents. The other two School Board members hail from the west side of Denton Highway where the remaining 70% of the District's residents live. Vallejo asserts the western part is "a more socio-economically diverse" area but does not allege any racial makeup of the western part of the district, nor specify what percentage of the western portion is Hispanic: he says only that "a considerable majority of Hispanics reside in the western half of KISD."[7] Vallejo claims this demonstrates that the District's at-large electoral system enables the 30% of the population living east of Denton Highway to control the elections against the wishes of the 70% of the population living west of the highway.

---

[3] Am. Compl. ¶ 26, ECF No. 29
[4] Am. Compl. ¶ 30, ECF No. 29.
[5] *Id.* at ¶ 28.
[6] *Id.* at ¶ 6.
[7] *Id.* at ¶ 32.

In 2024 the District contemplated dividing KISD into two districts, one on either side of the highway, but decided against doing so "after great community outcry"[8] opposing the proposed split.

Vallejo sued the District and the School Board members in their official capacities, claiming the at-large "electoral system denies Hispanic voters a fair opportunity to elect representatives of their choosing, illegally diluting their votes in violation of the Voting Rights Act and the United States Constitution."[9] He seeks declaratory relief that the voting scheme is unlawful. He further asks the Court to enjoin the current system and "order the implementation of a legal, representative voting system," such as a "cumulative voting system."[10] He proposes a cumulative voting system based on a "formula to determine the CVAP percent necessary for a group to elect a candidate of choice in the presence of bloc voting: one divided by the number of seats plus one."[11] His method would allow a bloc voting group to elect a candidate of choice with a CVAP as low as "12.5 percent if all seven seats were elected simultaneously,"[12] or under the current off-cycle system, a CVAP 25% or 33.3% depending on whether three seats or two were up for election. He contends that cumulative voting is necessary to "promote trustees from the more disadvantaged communities within the district"[13] and "allow Hispanic voters to gain representation by forming political coalitions across racial lines."[14] Defendants filed a Motion to Dismiss, which is ripe for the Court's review.

---

[8] *Id.* at ¶ 90.
[9] *Id.* at ¶ 6.
[10] Am. Compl. ¶¶ 9, 102, ECF No. 29.
[11] Resp. Br. 16–17, ECF No. 38.
[12] Resp. Br. 16–17, ECF No. 38.
[13] Am. Compl. ¶103, ECF No. 29.
[14] Resp. Br. 20, ECF No. 38; Am. Compl. ¶51, ECF No. 29.

## II.  LEGAL STANDARDS

### A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12 motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).  The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Iqbal*, 556 U.S. at 678–79.

### B. Motion for Attorney's Fees

The Voting Rights Act ("VRA") provides for "the prevailing party" in a lawsuit to recover "a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as

part of the costs." 52 U.S.C. § 10310(e). Fee-shifting is available in cases where "the plaintiff's action was frivolous, unreasonable, or without foundation, even [if] not brought in subjective bad faith." *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 203–04 (5th Cir. 2023) (quoting *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421 (1978)).

### III.   ANALYSIS

#### A. Motion to Dismiss

Vallejo alleges three causes of action: vote dilution in violation of Section 2 of the Voting Rights Act, racial discrimination in Violation of the Fourteenth Amendment, and racial discrimination in violation of Fifteenth Amendment. The Court addresses each in turn.

##### 1. Vote Dilution in Violation of Section 2 of the Voting Rights Act

Vallejo's vote dilution arguments fail because settled precedent requires challenges to an at-large voting system to satisfy *Gingles*. *Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020); *Thornburg v. Gingles*, 478 U.S. 30 (1986). Vallejo argues the at-large voting system creates vote-dilution in violation § 2 of the VRA.[15] That statute provides: "No voting . . . standard, practice, or procedure shall be imposed or applied . . . in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a). "[N]othing in [§ 2] establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." 42 U.S.C. § 1973(b). "[T]he

---

[15] At the beginning of his Response, Vallejo argues that "he does not challenge the at-large nature of the KISD election system." Resp. Br. 9, ECF No. 38. But his argument continually grounds itself upon the idea that "at-large KISD scheme, coupled with off-cycle voting, enables a white majority to prevent the growing minority community from electing candidates of their choice." *Id.* at 10; *see also id.* at 8 ("the present litigation challenges an at-large system"); *e.g.*, Am. Compl. ¶¶ 1, 6, 9, 10, 56, 61–62, 101, 110 (challenging the "at-large electoral structure" or "at-large system"). Thus, the Court finds that his argument is a challenge to the at-large system.

ultimate right of § 2 is equality of opportunity, not a guarantee of electoral success for minority-preferred candidates of whatever race." *Johnson v. DeGrandy*, 512 U.S. 997, 1014 n. 11 (1994).

"Under *Gingles*, plaintiffs challenging an at-large system on behalf of a protected class of citizens must demonstrate that (1) the group is sufficiently large and geographically compact to constitute a majority in a single-member district; (2) it is politically cohesive; and (3) the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate." *Fusilier*, 963 F.3d at 455 (quoting *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 868 (5th Cir. 1993)). In addition to satisfying these preconditions, "Plaintiffs must also show that, under the 'totality of circumstances,' they do not possess the same opportunities to participate in the political process and elect representatives of their choice enjoyed by other voters." *Id.* (internal citations omitted); *accord. Petteway v. Galveston Cnty.*, 111 F.4th 596, 608–10 (5th Cir. 2024) (en banc).

To meet the first *Gingles* precondition, a plaintiff must demonstrate that Citizen Voting Age Population ("CVAP") of 50% or more from a single racial group. The Supreme Court has held that "[r]ecognizing a § 2 claim where minority voters cannot elect their candidate of choice based on their own votes and without assistance from others would grant special protection to their right to form political coalitions that is not authorized by the section." *Bartlett v. Strickland*, 556 U.S. 1, 15 (2009).

Vallejo admits that Hispanic voters "cannot form a minority-majority, single-member district"[16] necessary to satisfy the first precondition of *Gingles*, and so his VRA claim fails. Yet, Vallejo proceeds to make several frivolous arguments. First, he argues that *Gingles* should "only

---

[16] Am. Compl. ¶ 109.

6

apply to redistricting cases"[17] and should not govern this case. But "[a]s a matter of law, the use of at-large voting can impede the ability of minority voters to elect representatives of their choice *only* if the plaintiffs demonstrate that the group meets the three *Gingles* requirements." *Perez v. Pasadena Indep. Sch. Dist.*, 165 F.3d 368, 372 (5th Cir. 1999) (emphasis added). Courts consistently apply the *Gingles* factors to challenges of at-large voting systems. *See Reyes v. City of Farmers Branch, Tex.*, 586 F.3d 1019, 1021–22 (5th Cir. 2009) (upholding at-large voting system because plaintiffs could not satisfy Gingles precondition 1); *Kumar v. Frisco Indep. Sch. Dist.*, 476 F.Supp.3d 439, 491–502, 512–14 (E.D. Tex. 2020) (upholding at-large system because plaintiff failed to satisfy *Gingles*' second precondition); *Benavidez v. Irving Indep. Sch. Dist.*, 690 F.Supp.2d 451, 454–60 (N.D. Tex. 2010) (rejecting challenge to at-large system in which district-wide Hispanic CVAP was 23.08%, because plaintiffs "failed to prove by a preponderance of the evidence that the Hispanic CVAP of each illustrative district exceeds 50%"); *id.* at 455 (satisfying all *Gingles* preconditions is "necessary" to show minority voters' ability has been impaired); *Valdespino v. Alamo Heights Indep. Sch. Dist.*, 168 F.3d 848, 850, 852 (5th Cir. 1999) (affirming lower court holding that plaintiffs failed to make a vote dilution claim because they could not demonstrate CVAP above 50% under *Gingles*' first precondition, upholding the challenged at-large election system, and rejecting as "baseless" plaintiffs' suggestion that *Gingles* 1 should not be applied mechanically or as "bright-line test" because plaintiffs should "only need show generally their electoral potential"); *Brewer v. Ham*, 876 F.2d 448, 452 (5th Cir. 1989) (analyzing and a school district's at-large voting system under *Gingles* and finding no VRA violation because

---

[17] Resp. Br. 15–16, ECF No. 38.

appellants failed their "burden to prove the existence of a single-member district in which they could elect candidates of their choice"). Thus, his argument is unavailing.[18]

Vallejo further argues that "*Gingles* prong one is contrary to the text and intent of the VRA"[19] and that "*Gingles* conflicts with the Equal Protection Clause and is ripe for overruling."[20] But Supreme Court recently reaffirmed using *Gingles* in "evaluat[ing] claims brought under §2." *Allen v. Milligan*, 599 U.S. 1, 17 (2023); *see also Petteway v. Galveston Cnty.*, 111 F.4th 596, 608–09 (5th Cir. 2024) (en banc) (noting that "[o]n two occasions, the Supreme Court has rejected Section 2 plaintiffs' attempts to circumvent" the *Gingles* requirement of "proof that the minority group is sufficiently large to constitute a majority in a reasonably configured single-member district"). Indeed, "Congress has never disturbed [the Court's] understanding of § 2 as *Gingles* construed it. And we have applied *Gingles* in one § 2 case after another, to different kinds of electoral systems." *Allen*, 599 U.S. at 19. Vallejo's claim is thus without merit and completely contrary to well-established, reaffirmed precedent.

Even if it were not, Vallejo fails to establish any facts supporting an inference of vote dilution under his own proposed framework of nothing more than the "totality of the circumstances." *Rogers v. Lodge*, 458 U.S. 613, 618 (1982). The "totality of the circumstances" shows only that Hispanics are such a relatively small percentage of CVAP that they cannot control elections and elect Trustees of their choice, which is not enough to demonstrate vote dilution. *Johnson*, 512 U.S. at 1014 n. 11; *see also* 42 U.S.C. § 1973(b).

---

[19] *Id.* at 13.
[20] *Id.* at 17.

His other assertion that the at-large system impermissibly "dilutes minority voting power,"[21] *i.e.*, a coalition of minorities beyond Hispanics, also fails. The Fifth Circuit has held that "coalition claims do not comport with Section 2's statutory language or with Supreme Court cases interpreting Section 2, particularly *Bartlett*." *Petteway*, 111 F.4th at 599; *see also id.* at 603 ("[The Fifth Circuit] holds that Section 2 of the Voting Rights Act does not authorize separately protected minority groups to aggregate their populations for purposes of a vote dilution claim.").

His attempt to argue that his theory is permissible because it advances "coalition politics," not a geographic "coalition-district,"[22] is completely foreclosed: "[t]he statutory text points to only one conclusion, that coalition claims are impermissible." *Petteway*, 111 F.4th at 607. This is because "[n]othing in § 2 grants special protection to a minority group's right to form political coalitions" and any coalition-based Section 2 claims would improperly "grant minority voters a right to preserve their strength for the purposes of forging an advantageous *political alliance*" with voters outside the minority group." *Bartlett*, 556 U.S. at 14–15 (emphasis added); *see also Petteway*, 111 F.4th at 607 ("It is Congress's failure to *expressly authorize* coalition claims that is dispositive of the issue.") (emphasis in original); *see id.* at 611–612 (finding that minority coalition claims impermissible in part because they deal with "choices [that are] quintessentially political and, like questions raised by political gerrymandering, are not susceptible of judicial decisionmaking."); *see also Campos v. City of Baytown, Tex.*, 849 F.2d 943, 945 (5th Cir. 1988) (Higginbotham, J., dissenting from denial of rehearing *en banc*) ("Playing with the structure of

---

[21] Resp. Br. 4, ECF No. 29; *see also* Am. Compl. ¶ 119, ECF No. 1 ("at-large [voting] system is maintained for a discriminatory purpose and dilutes, minimizes, and cancels out the voting strength of people of color in violation of the Fourteenth and Fifteenth Amendments."); *see also id.* at ¶ 110 ("under the totality of the circumstances, Plaintiff and minority voters are denied an equal opportunity to participate effectively in the political process"); *e.g.*, Am. Compl. ¶¶ 30, 41.
[22] Am. Compl. ¶51–52, ECF No. 29.

local government in an effort to channel *political* factions is a heady game; we should insist that Congress speak plainly when it would do so.") (emphasis added); *cf. Rucho v. Common Cause*, 588 U.S. 684 (2019). In sum, because the minority group—Hispanics—cannot show it "has the potential to elect a representative of its own choice in a single-member district, there neither has been a wrong nor can be a remedy under Section 2." *Petteway*, 111 F.4th at 609–10 (internal quotation omitted).

Not only is Vallejo's claim baseless, but his proposed cumulative voting solution that would allow a minority group of 12.5% CVAP to "elect a candidate of choice where, as here, the group votes cohesively"[23] is unlawful in context. He argues that the Court should mandate cumulative voting because it provides an avenue for "political coalitions across racial lines."[24] But this is exactly what the Supreme Court has disallowed: "grant[ing] minority voters a right to preserve their strength for the purposes of forging an advantageous *political* alliance" with voters outside the minority group." 556 U.S. at 14–15. Section 2 does not "require, by force of law, the voluntary cooperation" of "white voters joining forces with minority voters to elect their preferred candidate." *Bartlett*, 556 U.S. at 25–26. Such a requirement of "providing representation to a statutorily protected minority group despite its sub-majority numbers [through] coalition claims may 'cross the line from protecting minorities against racial discrimination to the prohibited . . . goal of mandating proportional representation.'" *Petteway*, 111 F.4th at 612 (internal citation omitted); *see also Allen v. Milligan*, 599 U.S. 1, 28 (2023) ("Forcing proportional representation is unlawful and inconsistent with this Court's approach to implementing § 2.").[25]

---

[23] Am. Compl. ¶ 47–50 ECF No. 29; Resp. Br. 17, ECF No. 38.
[24] Resp. Br. 12–13, ECF No. 38.
[25] Indeed, Plaintiff's complaint alludes to the lack of proportional representation: "[T]he citizen voting age population ("CVAP") of KISD was approximately 15.4% Hispanic or Latino. Coupled with the fact that

In sum: Vallejo admits he cannot satisfy the first pre-condition of *Gingles* and thumbs his nose at the well-established precedent requiring him to do so; he provides no facts supporting his foreclosed alternative framework; and his cumulative voting theory advocates for exactly what the Supreme Court has decried as unlawful— "the prohibited . . . goal of mandating proportional representation." *Petteway*, 111 F.4th at 612; *see also Allen*, 599 U.S. at 28.[26]

  2. <u>Counts 2 and 3: Racial Discrimination and Denial of Equal Protection in Violation of the Fourteenth and Fifteenth Amendments</u>

Vallejo also fails to show that the "at-large [voting] system is maintained for a discriminatory purpose and dilutes, minimizes, and cancels out the voting strength of people of color in violation of the Fourteenth and Fifteenth Amendments."[27] For a plaintiff to establish vote dilution in violation of the Equal Protection Clause or the Fifteenth Amendment, he must both (1) "'prove that the purpose and operative effect' of the challenged election scheme 'is to dilute the voting strength of [minority] citizens,'" and (2) that there is "an actual discriminatory effect on that group." *Harding v. Cnty. of Dallas, Texas*, 336 F. Supp. 3d 677, 700 (N.D. Tex. 2018), *aff'd*

---

Hispanic students make up 24.8% of the student body, one would expect to find at least one Hispanic member on the Board. However, there are none." Am. Compl. ¶ 63, ECF No. 29.

[26] Moreover, Vallejo's attempt to label his racially oriented arguments as promoting political ends "unrelated to race" defies good faith argumentation. *See* Resp. Br. 21, ECF No. 38. As one of many examples, Vallejo cites to the fact that (1) the School Board has not elected a Hispanic since 1999 and (2) that the past several Hispanic candidates have lost as evidence that Hispanic voters are unable to elect a candidate of their choosing, Am. Compl. ¶¶ 63-67, ECF No. 29, then turns around and asserts he does not assume that Hispanics always prefer Hispanic candidates, but that they are unable to elect candidates of their choice. Resp. Br. 21, ECF No. 38. At the very least, Vallejo assumes that Hispanics must not want a White candidate. Regardless, "Spanish-surname data are disfavored . . . for analyzing claims that the votes of Hispanics have been diluted in violation of Section 2 of the VRA." *Reyes v. City of Farmers Branch, Texas*, No. 3:07-CV-900-O, 2008 WL 4791498, (N.D. Tex. Nov. 4, 2008), *aff'd sub nom. Reyes v. City of Farmers Branch, Tex.*, 586 F.3d 1019 (5th Cir. 2009) *9. He further claims his cumulative voting solution is simply an "objective number unrelated to any demographic characteristics of the District." Resp. Br. 17, ECF No. 38. Crucially, this "objective number" ensures that a minority population as low as 12.5% CVAP could elect a candidate of its choosing, meaning his formula emerges from a "quintessentially race-conscious calculus." *Allen*, 599 U.S. at 31 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1020 (1994)).

[27] Am. Compl. ¶ 119, ECF No. 29.

*sub nom. Anne Harding v. Cnty. of Dallas, Texas*, 948 F.3d 302 (5th Cir. 2020) (quoting *Voter Info. Project, Inc. v. City of Baton Rouge*, 612 F.2d 208, 212 (5th Cir. 1980); *see also Davis v. Bandemer*, 478 U.S. 109, 127 (1986) (plurality opinion).

Vallejo's claims fail because he cannot prove a discriminatory effect, as explained above. Courts consistently find there is no violation of the Fourteenth or Fifteenth Amendment where a plaintiff cannot prove a Section 2 claim for vote dilution in an at-large system. *Harding*, 336 F. Supp. 3d at 701; *Hall v. Louisiana*, 108 F. Supp. 3d 419, 43–44 (M.D. La. 2015) (refusing to find a discriminatory purpose "in Defendant's failure to implement a new plan that better represents the current demographics" when plaintiffs were unable to prove a VRA Section 2 violation); *Lopez v. City of Houston*, No. CIV. A. H-09-0420, 2009 WL 1456487, at *18 (S.D. Tex. May 22, 2009), *aff'd*, 617 F.3d 336 (5th Cir. 2010) (finding that "if a challenged voting practice cannot be shown to violate § 2, which provides greater protection than the [Fourteenth and] Fifteenth Amendment[s], then *a fortiori*, that same practice cannot violate the prohibitions of the [Fourteenth and] Fifteenth Amendment[s]"); *see also Johnson v. DeSoto County Bd. of Comm'rs*, 204 F.3d 1335, 1344–45 (11th Cir. 2000) (questioning "as a legal proposition, whether vote dilution can be established under the Constitution when the pertinent record has not proved vote dilution under the more permissive section 2").

To the extent Vallejo argues an Equal Protection violation untethered from vote dilution, he fails because he does not allege facts permitting an inference of discriminatory intent. He argues that (1) the "recent efforts by members of the KISD Board to split the District into two districts" along socio-economic lines and (2) the "racially discriminatory history of at-large election systems in Texas"[28] evince the Board's discriminatory intent in maintaining the at-large voting system.

---

[28] Resp. Br. 21, ECF No. 38.

But the Board decided against splitting the district after community outcry. This rejected alternative that Vallejo claims would have been "unlawful" segregation of minorities,[29] does not permit an inference that the Board maintains the at-large system for a discriminatory purpose. Nor does a general allegation about the at-large voting system in Texas demonstrate discriminatory intent in this specific case. *See Zimmer v. McKeithen*, 485 F.2d 1297, 1304 (5th Cir. 1973) ("it is axiomatic that at-large . . . schemes are not per se unconstitutional."); *see also Abbott*, 585 U.S. at 603 ("The allocation of the burden of proof and the presumption of legislative good faith are not changed by a finding of past discrimination. '[P]ast discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful'") (citing *City of Mobile, Ala. v. Bolden*, U.S.55, 74 (1980)).

Vallejo also cites facts that are not relevant to the at-large voting system as "circumstantial evidence" that the Board has acted in a discriminatory manner. *Veasey v. Abbott*, 830 F.3d 216, 235 (5th Cir. 2016) ("to find discriminatory intent, direct or indirect circumstantial evidence, including the normal inferences to be drawn from the foreseeability of defendant's actions may be considered."). He claims that (1) the Board's makeup, and the general lack of diversity among teachers and District leadership, has "resulted in an unacceptable performance gap between white and minority students in the district;"[30] and (2) "recent events manifesting the Board's disregard for minority voices,"[31] including the District's decision to require parental consent before allowing students to read a "sexually explicit"[32] book, support his circumstantial contention. These are not

---

[29] Resp. Br. 26, ECF No. 38.
[30] Am. Compl. 74–76; *id.* at ¶ 118–19.
[31] Resp. Br. 2, ECF No. 38.
[32] Miranda Marzariegos and Meghan Collins Sullivan, *Efforts to ban books jumped an 'unprecedented' four-fold in 2021, ALA report says*, NPR (April 4, 2022) https://www.npr.org/2022/04/04/1090067026/efforts-to-ban-books-jumped-an-unprecedented-four-fold-in-2021-ala-report-says (last visited Jan 5, 2026).

the "circumstantial evidence" contemplated by the Fifth Circuit because they are irrelevant to the at-large election system.[33] *See Veasey*, 830 F.3d at 235–37 (contemplating legislator's knowledge that the law would have a racially disparate impact as circumstantial evidence showing intent to discriminate); *see also Rogers*, 458 U.S. at 618 (same). Because Vallejo alleges no facts that demonstrate an intentional discrimination in the maintenance of the at-large voting system, any Equal Protection claim he alleges fails.

### B. Motion for Attorney's Fees

Defendants seek attorney's fees in response to Plaintiff's spurious claims.[34] The Court finds that the Motion for attorney's fees should be granted. Vallejo's claims are utterly baseless: he admits that he cannot satisfy the *Gingles* precondition of a majority minority district necessary for his claim. His theory that *Gingles* does not apply or should be overturned clearly is foreclosed

---

[33] Indeed, these facts cannot give rise to any inference of discrimination. Lack of diversity itself does not demonstrate racial animus, nor do academic performance gaps that are consistent with socioeconomic and racial disparities across the country. *See Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015) ("disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity"); *see also Willis v. Amifast*, No. 5:23-CV-1408-JKP, 2024 WL 1543232, at *11 (W.D. Tex. Apr. 9, 2024) ("lack of diversity does not provide a reasonable basis to infer that Plaintiff was a victim of intentional discrimination."); *see also Thompson v. Leland Police Dep't*, 633 F.2d 1111, 1114 (5th Cir. Unit A 1980) ("statistical evidence alone does not establish or necessarily imply racially discriminatory practices"); *see* Sean F. Reardon, *School District Socioeconomic Status, Race, and Academic Achievement,* (Stan.) https://perma.cc/UZ9P-RM6L; *see also* MEREDITH COFFEY AND ADAM TYNER. EXCELLENCE GAPS BY RACE AND SOCIOECONOMIC STATUS, Washington D.C.: Thomas B. Fordham Institute (August 2023), https://fordhaminstitute.org/national/research/excellence-gaps-race-and-socioeconomic-status (last visited January 5, 2026). It is also worth noting that the Supreme Court has refused to endorse the assumption that racial diversity will have positive effects on the educational experience for K-12 schools and that achieving "racial balance, pure and simple, [is] an objective this Court has repeatedly condemned as illegitimate." *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 724–26 (2007). Though Vallejo does not advance arguments to this end here, his grievance about the lack of diverse teacher raises questions about achieving proportional racial representation in schools and the workplace more broadly. *See Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267 (1986) (finding unconstitutional a collective-bargaining agreement between a school board and a teacher's union that favored certain minority races); *See generally* Wax, Amy L. *Disparate Impact Realism*, 53 WM. & MARY L. REV. 621 (2011); *see also* Amy L. Wax, *Pursuing Diversity: From Education to Employment*, 2020 U. CHI. L. REV. ONLINE 94 (Oct. 30, 2020).
[34] Mot. Dismiss 30, ECF No. 35.

by well-established, reaffirmed precedent. *See Allen*, 599 U.S. at 17, 19; *Petteway*, 111 F.4th at 608–09 (en banc). Further, he does not offer any facts to suggest there is Hispanic vote dilution. Because the Court finds Vallejo's arguments "frivolous, unreasonable, [and] without foundation," it **GRANTS** Defendants' Motion for attorney's fees. *Vaughan*, 62 F.4th at 203–04.

### IV. CONCLUSION

Having reviewed the briefing and applicable law, the Court **GRANTS** Defendants' Motion to Dismiss. The Court further **GRANTS** Defendants' Motion for Attorney's Fees. Because there is no basis for relief and he cannot cure his majority-minority district deficiency, the Court **DISMISSES with prejudice** all of Vallejo's claims.

Furthermore, Vallejo admitted he does not cannot to meet the required preconditions for his claim and pled no facts to demonstrate vote dilution: he merely complains that Hispanics are such a small minority in the community that they cannot elect a candidate of their choice. The law is clear that "the ultimate right of § 2 is equality of opportunity, not a guarantee of electoral success for minority-preferred candidates of whatever race." *Johnson*, 512 U.S. at 1014 n. 11. And Vallejo's proposed remedy advanced an argument in favor of "unlawful" "proportional representation." *Allen*, 599 U.S. at 28; *Petteway*, 111 F.4th at 612; 42 U.S.C. § 1973(b). Accordingly, he and his counsel are **ORDERED** to show cause why they should not be sanctioned for filing a baseless petition. The response is due no later than **February 5, 2026**.

**SO ORDERED** on this **January 15, 2026**.

_____
Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**