IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **CLAUDIO VALLEJO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No.  4:25-CV-00138-O |
| | § | |
| **KELLER INDEPENDENT SCHOOL** | § | |
| **DISTRICT, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

**OPINION AND ORDER**

Before the Court are Defendants Keller Independent School District ("the District" or "KISD"), Charles Randklev ("Randklev"), John Birt ("Birt"), Joni Shaw Smith ("Smith"), Micah Young ("Young"), Chelsea Kelly ("Kelly"), Chris Coker ("Coker"), and Heather Washington's ("Washington") (collectively, "Defendants") Motion  for Attorney's Fees and Appendix in Support (ECF Nos. 52, 53); Plaintiff's Response to the Show Cause Order and Appendices in Support (ECF Nos. 55–57); Defendant's Reply to Plaintiff's Response to the Show Cause Order and Appendix in Support (ECF Nos. 58, 59); Plaintiff's Motion for Leave to File Sur-Reply in Response to its Show Cause Order (ECF No. 62); Plaintiff's Response and Opposition to the Motion for Attorney's Fees and Appendix in Support (ECF Nos. 63, 64); Defendant's Reply Regarding the Motion for Attorney's Fees (ECF No. 66); Plaintiff's Motion to Strike the Reply Regarding the Motion for Attorney's Fees (ECF No. 67); Defendant's Motion for Leave to file Amended Reply Regarding the Motion for Attorney's Fees (ECF No. 68); and Defendant's Amended Reply Regarding the Motion for Attorney's Fees (ECF No. 69).  Having reviewed the briefing and applicable law, the Court **GRANTS** the Motion to Strike (ECF No. 67), **DENIES** the

1

Motion to File a Sur-Reply (ECF No. 62),[1] and **GRANTS** Defendants' Motion for Attorney's Fees (ECF No. 52). Attorneys of record William A. Brewer III and Josuha H. Harris and the law firm of Brewer Storefront, PLLC ("Brewer") **SHALL** be jointly and severally liable for the attorney's fees.

## I.    BACKGROUND

The Court incorporates the factual background from its Order granting the Motion to Dismiss.[2] In that Order, the Court found that Defendants were entitled to attorney's fees and required Plaintiff to show cause why it should not be sanctioned for filing a frivolous case. Defendants submitted this Motion for attorney's fees on January 29, 2026. Plaintiff and his counsel filed their Show Cause Response on February 5, 2026. Plaintiff filed a notice of appeal on February 17, 2026, appealing the Court's Order.[3] The Motion for Attorney's Fees and Response to the Show Cause Order are ripe for review.

## II.    LEGAL STANDARDS

### A.  Attorney's Fees

A prevailing defendant may recover attorney's fees in a voting rights case when "the plaintiff's claim was frivolous, unreasonable, or groundless." *LULAC v. Roscoe Indep. Sch. Dist.*, 123 F.3d 843, 848 (5th Cir. 1997). Once a district court determines that a party is entitled to attorney's fees, it must utilize the lodestar method to determine the amount to be awarded. To determine the appropriateness of an award of attorney's fees, district courts follow a two-step process. *Alexander v. City of Jackson Miss.*, 456 F. App'x 397, 399 (5th Cir. 2011) (citing *Hensley*

---

[1] Sur-replies are "heavily disfavored" in the Fifth Circuit, *RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr.*, 836 F. App'x 232, 235–36 (5th Cir. 2020) (per curiam). Upon reviewing the proposed sur-reply, the Court also notes that Plaintiff does not address any new arguments or make new points.

[2] Order 1–3, Jan. 15, 2026, ECF No. 51.

[3] Notice of Appeal, ECF No. 61.

*v. Eckerhart*, 461 U.S. 424, 433 (1983)).  At step one, the Court makes its "lodestar" calculation in which it determines the reasonable number of hours expended on the litigation and the reasonable hourly rate to be charged and multiplies the hours expended by the hourly rate.  *Id.*  In determining the reasonable hours expended, courts may accept the attorney's adequately documented billing records but must exclude any time deemed excessive, duplicative, or inadequately descriptive.  *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  At step two, the Court exercises its broad discretion to determine whether the lodestar should be adjusted upward or downward, taking into consideration the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th 1974).  *Alexander*, 456 F. App'x at 399 (cleaned up).  Those factors include: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 718.  Though a district court has broad discretion to weigh these factors, "[t]he lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar."  *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).  Importantly, there is a strong presumption that the requested lodestar amount is reasonable, meaning it should only be modified if exceptional circumstances warrant an adjustment.  *Watkins*, 7 F.3d at 457.

### B. Sanctions

Under Rule 11(b)(2), "[s]anctions are appropriate if counsel submits a legally indefensible filing . . . [A] filing is legally indefensible if it is not warranted by existing law or by a nonfrivolous argument." *M2 Techn., Inc. v. M2 Software, Inc.*, 748 F. App'x 588, 589 (5th Cir. 2018) (citing *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016)) (internal quotations omitted). A claim is frivolous and the "Court's previous decisions foreclose a claim when the 'unsoundness' of the claim 'so clearly results from the previous decisions . . . as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'" *WickFire, L.L.C. v. Laura Woodruff; TriMax Media, L.L.C.*, 989 F.3d 343, 349 (5th Cir. 2021), *as revised* (Mar. 2, 2021) (quoting *Hagans v. Lavine*, 415 U.S. 528, 538 (1974)). A claim is also frivolous "where there is no evidence to support the claim." *Butler v. MBNA Tech., Inc.*, No. Civ.3:02-CV-1715-H, 2004 WL 389101, at *3 (N.D. Tex. Mar. 1, 2004), *supplemented*, No. Civ.3:02-CV-1715-H, 2004 WL 1049136 (N.D. Tex. May 10, 2004) (citing *Harris v. Plastics Manufacturing Co.*, 617 F.2d 438, 440 (1980)).

### III. ANALYSIS

### A. Attorney's Fees

#### 1. Jurisdiction

Even though Plaintiff has filed a notice of appeal, the Court has jurisdiction to decide the attorney's fees issues and issue final judgment. "Under 28 U.S.C. § 1291, federal courts of appeals are empowered to review only "final decisions of the district courts." *Microsoft v. Baker*, 582 U.S. 23 (2017) (internal citation and quotation marks omitted). An order is not a final decision or judgment. FED. R. CIV. P. 58(a) requires that "[e]very judgment and amended judgment must be set out in a separate document." The Collateral Order Doctrine allows a narrow expectation for

orders that "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006); *see also* 28 U.S.C. § 1292. Improper appeals from non-appealable orders are legal "nullit[ies]" that have no jurisdictional effect, meaning district courts retain full authority to continue proceedings and issue judgments. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982).

The Court's January 15, 2026 Order was non-appealable. It dealt with the merits of the action. At the time Plaintiff filed an appeal, the Court had not yet filed its final judgment. Plaintiff's notice of appeal filed in this case is therefore "not merely defective; it [is] a nullity." *Id.* at 61. Thus, this Court retains jurisdiction. The Court stands by its conclusion that Plaintiff's arguments are "frivolous, unreasonable, [and] without foundation,"[4] warranting a grant of attorney's fees.

   2.  Reasonable Hours

Defendants assert they spent 391 hours dealing with the litigation in this case. Plaintiffs object to this number and request a reduction for multiple reasons. The Court finds Defendant's 391 hours to be reasonable and briefly addresses Plaintiff's objections.

Plaintiff first argues this amount was unreasonable because "multiple attorneys billed for research on the same motions and overlapping issues . . . ."[5] Upon review, these entries indicate "no more than what the court would expect from a team of attorneys working on a case." *Dwyer v. Unitedhealthcare Ins. Co.*, No. A-17-CV-439-RP, 2026 WL 184247, at *9 (W.D. Tex. Jan. 21, 2026), *report and recommendation adopted*, No. 1:17-CV-439-RP, 2026 WL 374925 (W.D. Tex.

---

[4] Jan. 15, 2026 Opinion and Order 15, ECF No. 51 (quoting *Vaughan v. Lewisville Indep. Sch. Dist.*, 62 F.4th 199, 203–04 (5th Cir. 2023).
[5] Attorney's Fees Resp. 15, ECF No. 63.

Feb. 9, 2026).   The same is true for its entries designating team conferences, which are appropriately recoverable.  *See In re Damon Capital, Ltd.*, 672 B.R. 887, 901 (Bankr. W.D. Tex. 2024) (noting that "intraoffice conferences are often necessary and beneficial (and therefore compensable)").

Plaintiff's further objection to the number of research hours[6]—98.3—is particularly unpersuasive considering it admits it spent over 250 hours researching before filing its complaint.[7] The Court also finds the number of hours spent drafting motions and discovery responses reasonable.  "No attorney should underestimate the important role revising or editing a document plays, especially for documents submitted to the court. Poorly edited documents make the court's job harder, and the court appreciates well-crafted legal briefs."  *Dwyer*, 2026 WL 184247, at *10 n.4; *see also Yearout v. Astrue*, No. 3:10-CV-0430-L-BH, 2011 WL 2988421, at *2 (N.D. Tex. Mar. 15, 2011), *report and recommendation adopted*, No. 3:10-CV-00430-L, 2011 WL 2990368 (N.D. Tex. July 22, 2011) ("An attorney reviewing and editing the work of another attorney is both reasonable and common practice[.]").

Plaintiff's additional specific objections similarly lack merit.  Defendant's pre-suit work is recoverable as it was in response to the pre-suit demand letter Plaintiff sent to Defendant.[8]  *Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 189, 134 S. Ct. 773, 782, 187 L. Ed. 2d 669 (2014) (pre-suit work formulating defense strategy for anticipated litigation is recoverable); s*ee, e.g., Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913-D, 2005 WL 6789456 (N.D. Tex. Dec. 20, 2005), *aff'd*, No. 06-10123, 2007 WL 3085028 (5th Cir. Oct. 23, 2007).   Plaintiff's complaints about time entries

---

[6] Resp. 18, ECF No. 63.
[7] Resp. to Show Cause 4, ECF No. 55.
[8] Reply 7, ECF No. 69.

redacted to protect attorney-client privilege and work product are similarly unavailing. Redactions to protect confidential information are permissible and do not undercut the reasonableness of an attorney's fees request. *See, e.g., Book People, Inc. v. Wong*, No. 1:23-CV-858, 2025 WL 3769586, at *4 (W.D. Tex. Dec. 23, 2025) (finding redactions appropriate to protect confidential information); *see also Austin Shuler's Best Lawns, Inc. v. M. Shapiro Mgmt. Co. LLC*, No. 23-CV-1394, 2025 WL 1952090, at *3 (W.D. Tex. July 7, 2025) (refusing to "second-guess [a party's] assessment[] of what material is privileged"). The Court concludes that 391 hours is a reasonable amount of time spent.

### 3.   Reasonable Rates

Plaintiff does not challenge the hourly rates. Accordingly, the Court finds the billing rates to be reasonable. *See also Trade Group, Inc. v. BTC Media, LLC*, No. 4:23-CV-00555-P, 2025 WL 36528, at *5 (N.D. Tex. Jan. 6, 2025) (Jackson Walker, LLP rates between $355 and $850 found reasonable).

### 4.   Lodestar Calculation

The Court does not find that the *Johnson* factors warrant an enhancement or detraction. *Watkins*, 7 F.3d at 457. Thus, the Court awards **$284,559.97** in attorney's fees and costs. For the reasons explained below, Plaintiff's counsel of record, William A. Brewer III and Joshua H. Harris, and the law firm Brewer, **SHALL** be held jointly and severally liable for Defendants' attorneys' fees and expenses.

## B.  Show Cause

Also before the Court is Plaintiff's Response to the show cause order. The Court is deeply disturbed by the flagrant disregard for the law exhibited therein. The Fifth Circuit en banc recently warned that "[t]his court will not remain in the forefront of authorizing litigation, not compelled

by law or the Supreme Court, whose principal effects are to (a) supplant legislative redistricting by elected representatives with judicial fiat; (b) encourage divisively counting citizens by race and ethnicity; and (c) displace the fundamental principle of democratic rule by the majority with balkanized interests." *Petteway v. Galveston Cnty.*, 111 F.4th 596, 612 (5th Cir. 2024). This is precisely the kind of litigation Plaintiff brought. Plaintiff's attorneys spent an astounding *over 250 hours*[9] looking for a Voting Rights violation and came up empty. They nevertheless filed this suit when evidence was so lacking that "there is no basis from which to say these claims were not frivolous[.]" *Myers v. City of W. Monroe*, 211 F.3d 289, 293 (5th Cir. 2000).

The Appendix to the Show Cause Response confirms that Plaintiff and his attorneys sued to "[f]orc[e] proportional representation" in direct contravention of settled law. *Allen v. Milligan*, 599 U.S. 1, 28 (2023). Plaintiff and his counsel repeatedly frame the alleged harm as a lack of representation: "My decision to pursue legal action was motivated by genuine concern for *representative governance . . .* "[10]; "I observed the same concerns about the *lack of representation* resulting from the existing at-large election system"; [11] "[Brewer] analyze[d] whether the composition and practices of the Board resulted in a *lack of representation*"[12]; the pre-suit demand letter highlights that "KISD's Board of Trustees *does not represent* the community"[13] because all the Board members are white.

Furthermore, "squarely controlling precedent" foreclosed the plaintiff's legal argument that the *Gingles* preconditions do not apply to challenges to at-large electoral systems. *Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1147 (5th Cir. Unit A. 1981). Plaintiff claims he made a "reasonable

---

[9] App. Show Cause Resp., Affidavit of Joshua H. Harris, ECF No. 57.
[10] App. Show Cause Resp., Affidavit of Claudio Vallejo 177, ECF No. 57 (emphasis added).
[11] App. Show Cause Resp., Affidavit of Dixie Davis 190, ECF No. 57 (emphasis added).
[12] App. Show Cause Resp. Aff. Joshua H. Harris 4, ECF No. 57 (emphasis added).
[13] App. Show Cause Resp. Ex. B 15, ECF No. 57 (emphasis added).

argument" this case was not foreclosed by *Gingles* and its progeny. [14]  A simple syllogism demonstrates that his argument is self-defeating:

- *Gingles* only applies "if it is the electoral system itself that violates Section 2."[15]

- "This action demands that the Court declare KISD's at-large electoral structure unlawful under Section 2 of the VRA."[16]

- Therefore, *Gingles* applies to this action.

Setting aside logic, if *Gingles* does not apply, Plaintiff's argument is this: a plaintiff can, non-frivolously, demand an electoral-system-based remedy even when the electoral system does not violate Section 2.  No litigant could advance this claim in good faith.

And yet Plaintiff makes the unserious argument that the "existence of a Section 2 violation must be measured by"[17] the remedy sought.  This cannot be so.  As any first-year law student knows, the availability of relief cannot create the violation it purports to address. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 293 (2021) (noting the holding concerned redressability only and "[i]t remains for the plaintiff to establish the other elements of standing (such as a particularized injury) . . .").  "It is an ancient maxim, that a damage to one, without an injury in this sense"—"a wrong done to a person, or, in other words, a violation of his right"—"does not lay the foundation of an action." *Alabama Power Co. v. Ickes*, 302 U.S. 464, 479 (1938).  Plaintiff's argument that

---

[14] Show Cause Resp. 4, 10–19, ECF No. 55.
[15] Show Cause Resp. 14, ECF No. 55.
[16] Compl. ¶ 9, ECF No. 1; Pl.'s Resp. Br. Mot. Dismiss 1, ECF No. 38 ("The District's at-large voting system for electing its Board of Trustees denies minority voters equal voting opportunity, violating the Voting Rights Act"); *id.* at 10 "at-large KISD scheme, coupled with off-cycle voting, enables a white majority to prevent the growing minority community from electing candidates of their choice."; *see also id.* at 8 ("the present litigation challenges an at-large system"); *e.g.*, Compl. ¶¶ 1, 6, 10, 56, 61–62, 101, 110, ECF No. 1 (challenging the "at-large electoral structure" or "at-large system").
[17] Show Cause Resp. 20, ECF No. 55.

"*Gingles* preconditions are simply not applicable to a cumulative voting case"[18] is frivolous and outside the bounds of "creative advocacy." *Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1194 (5th Cir. 1996).

Worse still, Plaintiff's attorneys proudly demonstrate that they knew this argument is foreclosed. The firm representing Plaintiff, Brewer, identified 18 lawsuits in which it has pursued Voting Rights Act claims.[19] It has *never won* on its cumulative voting system remedy theory: in every case decided on the merits, they *lost*. *See Vaughan v. Lewisville ISD*, 4:19-cv-00109 (lost on summary judgment, and plaintiff subsequently dismissed on appeal); *Kumar v. Frisco ISD*, 4:19-cv-284 (dismissed with prejudice after a bench trial); *see also Benavidez v. Irving ISD*, 3:08-cv-924 (dismissed with prejudice); *Vallejo v. Keller ISD*, 4:25-cv-138 (not seeking cumulative voting specifically but challenging an at-large system and dismissed with prejudice because plaintiff did not meet *Gingles* precondition 1). All other cases settled or the parties stipulated to an agreed judgment. And, Plaintiff's attorneys have already been held "jointly and severally liable" for attorney's fees in *Vaughan*. No. 4:19-CV-109-SDJ, 2021 WL 6125786, at *7 (E.D. Tex. Dec. 28, 2021), *vacated and remanded in part*, 62 F.4th 199 (5th Cir. 2023). This history eliminates any good-faith basis for its assertion that its claims in this case are "novel"[20] or "reasonable."[21]

The Fifth Circuit has expressed recent concern over the dynamic these lawsuits reflect, observing that "defendants will often settle or will take preemptive redistricting actions in anticipation of [costly] litigation, even though the actions might be legally unsound or

---

[18] Show Cause Resp. 5, ECF No. 55.
[19] App. Show Cause Resp. Ex 1, ECF No. 57.
[20] Show Cause Resp. 25, ECF No. 55.
[21] *Id.* at 4.

unnecessary." *Petteway*, 111 F.4th at 611. Of the 18 lawsuits Brewer referenced, 14 settled. These actions strongly suggest political harassment that has no place in our court system. "The proper way for Plaintiffs to effect policy change is through the legislative process itself, not by suing in this Court." *Pickup v. Biden*, No. 1:22-CV-00859 (TNM), 2022 WL 17338099, at *4 (D.D.C. Nov. 30, 2022).

In sum: the Show Cause Response demonstrates that (1) Plaintiff brought this case to force proportional representation unlawfully and (2) Plaintiff's attorneys knew the claims were "objectively baseless," of the sort "no reasonable litigant could realistically expect success on the merits." *Bryant v. Mil. Dept. of Mississippi*, 597 F.3d 678, 692 (5th Cir. 2010) (internal citation omitted). Accordingly, attorneys of record William Brewer III and Josuha Harris and the law firm of Brewer Storefront, PLLC **SHALL** be jointly and severally liable for the attorney's fees.

Furthermore, Plaintiff and counsel from Brewer are admonished to seek alternative—*i.e.*, non-judicial—avenues to effect such political change moving forward. "If plaintiff desires a change in the current law it must go the appropriate source, the legislative branch of government." *Rohm & Haas Co. v. United States*, 568 F. Supp. 751, 759 (Ct. Int'l Trade 1983), *aff'd*, 727 F.2d 1095 (Fed. Cir. 1984). Using the court system to bully lawful litigants into caving for demands not warranted by law is certainly "conduct unbecoming a member of the bar." *Fletcher v. Experian Info. Sols., Inc.*, 168 F.4th 231, 239 (5th Cir. 2026). The Court warns Plaintiff's attorneys that such conduct should cease from Brewer and will not be tolerated.

**SO ORDERED** on this **April 8, 2026**.

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**

11